UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MATTHEW QUITTO,

               Plaintiff,

vs.                          Case No.  2:06-cv-286-FtM-29DNF

BAY COLONY GOLF CLUB, INC.,

               Defendant.
_____

**OPINION AND ORDER**

     This matter comes before the Court on the following motions filed by defendant: (1) Motion for Summary Judgment (Doc. #45) filed on March 13, 2007, to which plaintiff filed a response (Doc. #56) on April 19, 2007; (2) Motion to Strike Certain Portions of Plaintiff's Response to Defendant's Motion for Summary Judgment and Plaintiff's Declaration in Support (Doc. #58) filed on April 27, 2007, to which plaintiff filed a response (Doc. #59) on May 8, 2007; and (3) Motion to Strike Deposition Transcripts in Support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. #69) filed on May 23, 2007.

**I.**

     Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be

2

drawn in favor of the non-moving party.   <u>Shotz v. City of Plantation, Fl.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

Viewed in the light most favorable to plaintiff, the summary judgment facts are as follows: In October 2001, Matthew Quitto (Quitto or plaintiff), a fifty-two year old African-American male, was hired by Bay Colony Golf Club (Bay Colony or defendant) as a line cook.  (Quitto pp. 20, 55.)  He was promoted to sous-chef in 2004 under Executive Chef Wilhelm Gahabka.  As sous-chef he was "second-in-command" of the kitchen, and was responsible for supervising others, assisting with food production tasks, and assuring quality and cost standards.  The sous-chef was also required to "stand, walk . . . regularly lift and/or move up to 10 pounds and frequently lift and/or move up to 60 pounds." (Doc. #56-2, p. 2.)  While the sous-chef position description contained these physical requirements, the majority of heavy lifting was done by others in the kitchen and there were other employees available to assist.  (Leonard, p. 48; Gahabka, p. 71.)

In early May 2005, Quitto tripped on a mat while carrying a food tray and injured himself.  (Quito p. 27.)  As a result of the injury Quitto came to work with a cane, which caused Gahabka and Martha Mazzitelli, Bay Colony's Director of Human Resources, to inquire as to what happened.  (Quitto pp. 27-30.)  Quitto

explained that he tripped on a kitchen floor mat and re-aggravated an old hip injury that had resulted in hip replacement surgery in 2001.  Gahabka and Mazzitelli instructed Quito to go home and see a doctor as it was unsafe for him to remain in the kitchen with a cane.

Quitto went to the Naples Urgent Care, which instructed him to see his orthopedic surgeon as soon as possible, but in the meantime gave him crutches and a note excusing him from work from May 7 to May 16, 2005.  (Doc. #46-11.)  Quitto provided the note to Gahabka.  On May 16, 2005 Quitto met with Dr. Kagan, an orthopedic surgeon, who asked him not to go back to work for an additional two weeks.  (Doc. #47-3.)  Dr. Kagan also diagnosed Quitto with advanced osteoarthritis in his left knee which would require a knee replacement.  (Kagan, p. 16.)  On May 19, 2005, Mazzitelli sent Quitto the Family Medical Leave Act (FMLA) paperwork to complete and return to Advantec, an outside company that assisted Bay Colony with human resource issues.

On June 2, 2005, Quitto had a follow up appointment with Dr. Kagan, in which he was informed he could not return to work. (Doc. #47-4.)  Dr. Kagan completed the FMLA certification Form on which he indicated that Quitto was unable perform any type of work and that he needed hip surgery for which he would be out of work for twelve weeks.  (Kagan, Ex. 3.)

4

On July 25, 2005, Quitto faxed Mazzitelli a note from Dr. Kagan's office stating that Quitto "may return to work - light duty." (Doc. #56-3.)  Mazzitelli discussed Dr. Kagan's note with Tracey DiBiase, a senior Human Capital Consultant from Advantec, who advised her to get more information.   (Doc. #47, ¶9.) Mazzitelli contacted Quitto about the note, who referred her to Dr. Kagan.   Upon contacting Dr. Kagan's office, Mazzitelli received a follow up note, which indicated that light duty meant:

> lifting 20lbs. Maximum: frequent lifting or carrying objects up to 10lbs.  Work is classified light if it requires walking or standing to a significant degree (regardless of weight lifted) or involves sitting most of the time with a degree of pushing or pulling or arm or leg controls.  (Doc. #56-4.)

Upon review of the additional note, Mazzitelli and DiBiase believed that Quitto would be unable to perform the essential functions of a sous-chef upon the expiration of the FMLA leave. (Doc. #47, ¶11.)  They consulted with Jerry Thirion, Bay Colony's general manager, and the decision was made to terminate Quitto effective July 29, 2005 (the date of expiration of his FMLA leave) on the basis of Quitto's inability to perform the essential functions of the sous-chef position.  (Id. at ¶12.)

As a result of his termination, Quitto filed a ten count complaint[1] alleging violations of the Family Medical Leave Act

---

[1]  The Court notes that Count X has been remanded to state court. (Doc. #23.)

(FMLA), Title VII, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), 42 U.S.C. § 1981, and the Florida Civil Rights Act (FCRA).  Additional facts are set forth below as needed.

### III.

In analyzing claims under Title VII, the ADA, ADEA, 42 U.S.C. § 1981 and the FCRA, the Court follows the same burden-shifting analysis established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) and its progeny.  <u>Gamboa v. American Airlines</u>, 170 Fed. Appx. 610, 612 (11th Cir. 2006) (citing <u>Harper v. Blockbuster Entm't Corp.</u>, 139 F.3d 1385, 1387 (11th Cir. 1998)(claims under Title VII and the FCRA are analyzed under the same burden-shifting framework); <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998)(both Title VII and 42 U.S.C. § 1981 have the same requirements of proof and use the same analytical framework); <u>Lubetsky v. Applied Card Sys., Inc.</u>, 296 F.3d 1301, 1305 (11th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1106 (2003)(ADA claims are analyzed under the <u>MacDonnell Douglas</u> framework); <u>Turlington v. Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1432 (11th Cir. 1998), <u>cert. denied</u> 525 U.S. 962 (1998)(ADEA claims are analyzed using the <u>MacDonell Douglas</u> framework).  As such the Court analyzes all the discrimination counts (Counts

III-IX) pursuant to the burden-shifting framework of McDonnell Douglas and its progeny.

In employment discrimination cases, the plaintiff must show that defendant intentionally discriminated against him, a burden that remains at all times with plaintiff.  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, (1981).  Plaintiff must first present a prima facie case of discrimination by either: (1) showing direct evidence of discrimination; (2) satisfying the scheme for circumstantial evidence of discrimination under McDonnell Douglas; or (3) by demonstrating, through statistics, a pattern of discrimination.  Alphin v. Sears, Roebuck & Co., 940 F.2d 1497 (11th Cir. 1991).

By establishing a prima facie case, the plaintiff creates a rebuttable presumption that the challenged action was motivated by a discriminatory intent.  Equal Employment Opportunity Comm'n v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002), cert. denied, 539 U.S. 941 (2003); see also Burdine, 450 U.S. at 254.  The burden then shifts to the defendant to produce a "legitimate, nondiscriminatory reason" for the challenged employment action.  McDonnell Douglas, 411 U.S. at 802; Lubetsky, 296 F.3d at 1305.  If the defendant articulates one or more such reasons, the presumption of discrimination is rebutted and the

burden shifts back to the plaintiff to prove that the reasons offered by the defendant are a pretext for unlawful discrimination. McDonnell Douglas, 411 U.S. at 805; Lubetsky, 296 F.3d at 1305; Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." Joe's Stone Crabs, 296 F.3d at 1273.

## A.   Direct Evidence

The Court finds that plaintiff has not presented direct evidence of race, age or disability discrimination. "Direct evidence" of discrimination has been defined by the Eleventh Circuit as "evidence from which a trier of fact could reasonably find that the defendant more probably than not discriminated against the plaintiff on the basis of a protected personal characteristic." Wright v. Southland Corp., 187 F.3d 1287, 1300 (11th Cir. 1999). Direct evidence reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Damon v. Fleming Supermarkets of Fla., 196 F.3d 1354, 1358 (11th Cir. 1999), cert. denied, 529 U.S. 1109 (2000) (quotations omitted); see also Akouri v. State of Fl. Dept. of Transp., 408 F.3d 1338, 1347

8

(11th Cir. 2005).   To meet the definition of "direct evidence," the evidence must indicate that the adverse employment decision was actually motivated by the decision maker's racial, age or disability discrimination.   See, e.g. Damon, 196 F.3d at 1358-59. Thus, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of [race, age or disability]," will constitute direct evidence of discrimination. Akouri, 408 F.3d at 1347 (internal citations and quotations omitted).

In the present case, the only evidence put forth by Quitto is that the executive chef referred to black employees as "dirty monkeys" in Creole.   (Doc. #56, p. 19.)   The Court finds that this statement does not constitute direct evidence of race being the basis for Quitto's termination.   There is no indication as to when Gahabka make the comment, or if it was related to Mazzitelli, DiBiase and Thirion's decision to terminate Quitto. Furthermore, Quitto testified that the only racial comment he personally heard at work was 'old man'.   (Quitto, pp. 41, 44-45.) Quitto testified that he was unsure whether the 'old man' comment was a joke or not.   (Quitto, p. 44.)   Furthermore, there is no evidence in the record indicating who specifically made the comment.   The Court finds that the 'old man' comment does not constitute direct evidence of age discrimination.   Therefore, the

Court finds no direct evidence of discrimination based on race, age or disability.

## B.  *McDonell Douglas* Analysis

Under the McDonnell Douglas standard of proof, a plaintiff must first establish a prima facie case of intentional discrimination.  Id. at 802.  If plaintiff meets this burden, there is a presumption that intentional discrimination has occurred.  Burdine, 450 U.S. at 254 n.7; Crawford v. Western Elec. Co., 745 F.2d 1373, 1376 (11th Cir. 1984).

### (1)  Race Discrimination Claims under Title VII, § 1981, and the FCRA

Under the first step of the McDonnell Douglas test, plaintiff must establish the following elements of a disparate treatment claim: (1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) defendant employer treated similarly-situated employees outside of plaintiff's classification more favorably; and (4) plaintiff was qualified to do the job.  See Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 (11th Cir. 2006); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  Defendant concedes that Quitto meets the first two requirements as he is an African-American male who was terminated.  (Doc. #45, p. 11.)  However, defendant asserts that plaintiff failed to satisfy the third and fourth

elements.   The Court will address these two elements in reverse order.

### a.   Qualification for the Position

Defendant contends that the plaintiff was not qualified for the sous-chef position at the time of his termination because Quitto failed to provide any information that would indicate that he could perform his job responsibilities without restrictions. (Doc. #45, p. 15.)  Specifically, Bay Colony argues that a sous-chef must be able to be on his feet during the majority of the shift and lift objects over ten pounds and up to sixty pounds.

Quitto responds by referring to his argument discussing an individual's qualifications under the ADA.   (Doc. #56, p. 18.) Quitto asserts that he was qualified as he could perform all the functions listed under the "Essential Duties and Responsibilities" section of the sous-chef position description. Plaintiff argues that the medical note received by defendant from Dr. Kagan did not adversely impact Quitto's ability to perform any of those sixteen listed responsibilities.   Furthermore, plaintiff asserts that lifting is not an "essential" job function

as defined by 29 C.F.R. § 1630.2(n)(2)[2] and as interpreted by the courts. (Doc. #56, p. 15.)

The Court finds that this issue cannot be resolved in defendant's favor on summary judgment as it is a question of disputed fact. While the job description is clear that an individual must be able to "frequently lift and/or move up to 60 pounds," there is evidence to support plaintiff's position that the functions listed in the job description are not all mandatory. Quitto testified that his job did not require him to "lift anything if [he] did not want to." (Quitto, p. 125.) Furthermore, Leonard, Gahabka's predecessor, testified that "most of the heavy work is done by prep cooks." (Leonard, p. 48.) Therefore the Court finds that there is a disputed question of material fact as to whether Quitto was qualified for the sous-chef position, and will assume for purposes of this motion that plaintiff was qualified for the position.

---

[2] 29 C.F.R. § 1630.2(n)(2) states:

   (2) A job function may be considered essential for any of several reasons, including but not limited to the following: (i) The function may be essential because the reason the position exists is to perform that function; (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

### b.   Similarly Situated Employees

In order to establish a prima facie case of race discrimination, Quitto has the burden of showing that similarly situated non-minority employees were not terminated at the conclusion of their FMLA leave. "In order to meet the comparability requirement a plaintiff is required to show that he is similarly situated in all relevant aspects to the non-minority employee." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001), cert. denied, 534 U.S. 976 (2001). In other words, Plaintiff must be "matched with a person or persons who have very similar job-related characteristics and who are in a similar situation" to plaintiff. MacPherson v. Univ. of Montevallo, 922 F.2d 766, 775 (11th Cir. 1991); see also Ren v. Univ. of Cent. Florida Bd. Of Trustees, 390 F. Supp. 2d. 1223, 1229-30 (M.D. Fla. 2005), aff'd, 179 Fed. Appx. 680 (2006).

Plaintiff's response identifies only Lynda Stankowitz, a Caucasian female, as a similarly situated individual who was treated differently. (Doc. #56, p. 18.) Stankowitz took FMLA leave and was allowed to return to work at the conclusion of her leave. Defendant counters that there are no similarly situated individuals outside of plaintiff's race who were treated better than plaintiff. (Doc. #45, p. 15.)

The Court finds that Stankowitz is not similarly situated to Quitto.  The two former Bay Colony employees share nothing in common other than having been employed by the same organization and going on FMLA leave.  Stankowitz was an administrative assistant while Quitto was a sous-chef.  (Doc. #1; Mazzitelli, Ex. 27.)  The Eleventh Circuit has stated that "exact correlation is neither likely nor necessary, but the cases must be fair congeners."  Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999)(citing Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989)).  The record in this case provides the Court with no basis to draw any correlation between Quitto and Stankowitz.  Plaintiff has failed to show that Stankowitz had similar responsibilities or job functions or that she reported to the same supervisors.  Therefore, the Court finds that plaintiff has failed to establish a prima facie case of race discrimination under Title VII, 42 U.S.C. § 1981 or the FCRA, and hence summary judgment is granted as to Counts III, IV, and V.

**(2)  Disability Discrimination Claims under the ADA and the FCRA**

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual."  42 U.S.C. § 12112(a).  To establish a prima facie case of discrimination under the ADA, plaintiff must show that

he: (1) has a disability, (2) was a qualified individual at the relevant time, and (3) was subjected to unlawful discrimination because of his disability.  Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1215 (11th Cir. 2004); Williams v. Motorola, Inc., 303 F.3d 1284, 1290 (11th Cir. 2002); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001).  The Court will only address prongs one and three, since it has already addressed plaintiff's qualifications.

### a.  Disability

Under the ADA, a "disability" is defined to include three discrete alternatives: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment.  42 U.S.C. § 12102(2); Carruthers, 357 F.3d at 1215; Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 562-563 (1999).  The Court need only address the first and third alternatives.

### (i)  Physical or Mental Impairment

In determining whether a plaintiff has a disability under the first alternative, the Court engages in a three step process. First, the Court must first determine whether Plaintiff's medical condition constitutes an "impairment."  Second, if plaintiff's medical condition is an "impairment," plaintiff must demonstrate

15

that the impairment limits a "major life activity." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195 (2002); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1327 (11th Cir. 1998). Finally, plaintiff must show that the limitation on the major life activity is "substantial." Williams, 534 U.S. at 195; Bragdon v. Abbott, 524 U.S. 624, 631 (1998).

Plaintiff alleges that his hip injury is an impairment that substantially limits the major life activities of walking and working[3]. (Doc. #56, p. 11-12.) Defendant contends that plaintiff cannot show that he has a disability under the ADA because his condition does not substantially limit any major life activity. (Doc. #45, p. 11-13) Defendant also asserts that Quitto should be estopped from alleging he is disabled on the grounds that in his application for unemployment benefits he indicated that he was not disabled. (Doc. #45, pp. 16.)

As an initial matter, the Court finds that Quitto's previous statements do not estop him from filing an ADA claim. The Supreme Court has stated that an employee is entitled to explain any discrepancies in the record, and that such explanations "must be sufficient to warrant a reasonable juror's concluding that . . . the plaintiff could nonetheless perform the essential functions of [the] job, with or without reasonable accommodation."

---

[3] The Court notes that plaintiff only argues working as an impacted major life activity in a footnote. (Doc. #56, n. 11.)

Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 807 (1999). In the present case, defendant explained that his response on the unemployment benefits form was due to his fear of being denied future employment on the grounds of his disability.  (Quitto, p. 221.)  The Court finds that a reasonable jury could find that Quitto's explanation is reasonable and does not negate his claim under the ADA.[4]

Defendant concedes that Quitto has a physical impairment, and to the extent that it is disputed, the Court concludes that the record adequately establishes that plaintiff is limited in the major life activities of walking and working.  Thus, the only issue that remains is whether those limitations were substantial at the time of his termination.

"Substantial" means "considerable" or "to a large degree," and precludes impairments that interfere in only a minor way with the performance of the major life activity.  Williams, 534 U.S. at 196.  The EEOC has defined "substantially limits" as "[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner or duration under which an individual

---

[4] The Court notes that Quitto also explains the discrepancy in his application for worker compensation.  Plaintiff explained that the reason he stated that he is unable to work on that form was that, at the time of the injury, he was unable to work and not on the date he actually signed the document.  (Quitto, p. 169.)

can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). Factors to be considered include the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii); Gordon v. E.L. Hamm & Assocs., Inc., 100 F.3d 907, 911 (11th Cir. 1996). The Supreme Court has indicated that an individualized assessment of the effect of an impairment is necessary, and plaintiff must offer evidence that the extent of the limitation in terms of his or her own experience was substantial. Williams, 534 U.S. at 198-99; Albertson's, Inc., 527 U.S. at 566.

Furthermore, to be substantially limited in the major life activity of working, an individual must be precluded from a class of jobs or a broad range of jobs in a class compared to the average person having comparable training, skills, and abilities. Carruthers, 357 F.3d at 1216. It does not mean being precluded from plaintiff's particular job. Williams, 534 U.S. at 199-200; Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999).

18

Plaintiff asserts that his ability to walk is "substantially" limited.  He points to the fact that he has had hip replacement surgery, and now requires knee replacement surgery.  (Doc. #56, p. 11.)  Moreover, he walks with a limp and at times requires the assistance of a cane.  (Doc. #56, p. 11.)

Defendant contends that Quitto is not substantially limited in any major life activity, as evidenced by Quitto's testimony that he can walk a block without any problems, and that he only experiences pain if he walks half a mile or more.  (Doc. #45, p. 13; Quitto, pp. 47-48.)  Defendants argue that cases addressing walking have found that a temporary limitation or an inability to walk an extended distance do not constitute a 'substantial' limitation.  (Doc. #35, p. 13-14.)  The Court agrees.

The evidence, on which plaintiff relies, establishes that Quitto does indeed have difficulty walking.  However, the record also demonstrates that this impairment has not substantially interfered with any major life activities.  Plaintiff's initial hip replacement surgery in 2001 did not impact his ability to work as evidenced by his employment in Bay Colony's kitchen. Furthermore, Dr. Kagan testified that the imposition of light duty restriction did not require plaintiff to sit or not stand for extended period of times.  (Doc. #56-4.)  Furthermore, the light duty restriction did not impose a walking restriction.

19

(Kagan, pp. 25-26.)   The Eleventh Circuit has stated that the inability to walk for extended periods of time does not constitute a substantial limitation of a major life activity. Rossbach v. City of Miami, 371 F.3d 1354, 1359 (11th Cir. 2004). The Court also notes that courts have ruled that "a diminished activity tolerance for normal daily activities such as lifting, . . . as well as a lifting restriction, do not constitute a disability under the ADA." Chanda v. Engelhard/ICC, 234 F.3d 1219, 1222 (11th Cir. 2000).   In the present case, Quitto was authorized to continue lifting up to twenty pounds. (Doc. #56-4.)   Thus, the Court concludes that Quitto is not disabled under 42 U.S.C. § 12102(2)(A).

### (ii) Regarded as Disabled

Plaintiff contends that he was regarded as being disabled by defendant, which satisfies an alternative definition of "disability" under the ADA.   (Doc. #56, p. 12.)   42 U.S.C. § 12102(2)(C); Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521-22 (1999).   The United States Supreme Court has stated that there are two ways in which individuals may fall within this statutory definition:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life

20

> activities.   In both cases, it is necessary that a
> covered entity entertain misperceptions about the
> individual – it must believe either that one has a
> substantially limiting impairment that one does not
> have or that one has a substantially limiting
> impairment when, in fact, the impairment is not so
> limiting.

Sutton, 527 U.S. at 589.   To prevail on a perception theory of

disability discrimination, plaintiff must show that, as with a

real impairment, the perceived impairment is substantially

limiting and significant.   Carruthers, 357 F.3d at 1216; Sutton,

185 F.3d at 1208; E.L. Hamm & Assocs., Inc., 100 F.3d at 913.

In support of his contention that he was perceived as

disabled, Quitto points to the fact that upon seeing him walking

with a cane, both Gahbka and Mazzitelli asked him to go home.   In

addition, when presented with an opportunity to allow him to

return to work, Bay Colony determined that he could no longer

perform his job and terminated him.   (Doc. #56, p. 12.)

Furthermore, Mazzitelli interpreted Dr. Kagan's note for light

duty as stating that Quitto was unable to stand and was unable to

perform his job.   (Mazzitelli, pp. 75-77.)   Defendants did not

address this point.

The Court finds that the record contains sufficient evidence

from which a reasonable jury could find that Bay Colony perceived

Quitto as being disabled.   Both Mazzitelli and Gahabka testified

that they believed Quitto could not perform his job.

Furthermore, Thirion, the general manager of Bay Colony, stated that an attempt should be made to accommodate Quitto, which a reasonable jury could find to mean that he regarded Quitto as disabled.   (Thirion, p. 59.)   Therefore, the Court finds that there is a genuine issue of material fact as to whether Quitto meets the definition of disabled under the ADA, and hence summary judgment is denied on this ground.

### b.   Subjected to Unlawful Discrimination

An employer unlawfully discriminates against a qualified individual with a disability "when the employer fails to provide 'reasonable accommodations' for the disability – unless doing so would impose an undue hardship on the employer.   42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a)."   Lucas, 257 F.3d at 1255. An accommodation is reasonable, and therefore may be required under the ADA, only if it enables the employee to perform the essential functions of the job.   Id. at 1255.   Plaintiff bears the burden of identifying an accommodation and demonstrating that it would enable him to perform the essential functions of his job.   Id. at 1255-56; Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997).   In the Eleventh Circuit, the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation is made. Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363-

64 (11th Cir. 1999).   Examples of reasonable accommodations include job restructuring, reassignment to a vacant position, and acquisition or modification of equipment or devices; it is not required, however, that a disabled employee be promoted to a different job as a reasonable accommodation.  <u>Lucas</u>, 257 F.3d at 1256-5.

Plaintiff contends that prior to being terminated defendant refused his request for a reasonable accommodation, i.e., that he be excused from lifting more then twenty pounds.  (Doc. #56, p. 16.)   Furthermore, plaintiff asserts that defendant violated 29 C.F.R. § 1630.2(o)(3)[5], which provides that:

> to determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

Specifically, Bay Colony never engaged in any discussion with plaintiff as to what accommodations were available or the extent to which Quitto could perform his job functions.  (Doc. #56, p. 16-17.)

The record before the Court creates an issue of fact as to whether Quitto requested a reasonable accommodation.  Mazzitelli

---

[5] The Court notes that the citation in plaintiff's response is incorrect as it cites to 29 U.S.C. § 1620.2(o)(3) which does not exist.  (Doc. #56, p. 17.)

testified that Quitto never asked for an accommodation, and she did not consider Dr. Kagan's light duty note to be such a request.  (Mazzitelli, p. 80.)  That position is further supported by Quitto's deposition, wherein he states he never requested a reasonable accommodation.  (Quitto, p. 230.) Plaintiff on the other hand, asserts in his response that he did request an accommodation, which was misinterpreted by Mazzitelli. (Doc. #56, p. 16.)  The Eleventh Circuit has indicated that the request for an accommodation need not be made directly by the employee, but can be made by a representative.  See e.g., Warren v. Volusia County, Fl., 188 Fed. Appx. 859, 863 (11th Cir. 2006)(Court dismissed case where plaintiff never requested any accommodation, either on her own or through a representative.) The Court finds that a reasonable jury could find that Quitto requested an accommodation by faxing Dr. Kagan's note and then referring Mazzitelli to his doctor for any follow up questions. This finding is further supported by Thirion instructing Mazzitelli to "try to and accommodate [Quitto]."  (Mazzitelli, p. 80; Thirion, p. 59.)

Finally, whether a limitation on the weight that Quitto could lift constitutes an undue hardship on the defendant presents a jury question.  There is conflicting testimony regarding the frequency and the need to lift over twenty pounds.

Gahabka testified that a sous-chef is constantly lifting items from sauce pans to fifty pound bags of potatoes.  But he also testified that there "other hands in the kitchen who could assist in lifting." (Gahabka, pp. 69, 71.)  Whereas Quitto testified he never had to lift anything if he did not want to.  (Quitto, p. 125.)  Hence, the Court finds that Quitto has established a prima facie case of discrimination under the ADA.

### c.   Nondiscriminatory Reason / Pretext

By establishing a prima facie case of discrimination based on disability, the burden now shifts to the defendant to provide a legitimate nondiscriminatory reason for the termination.  Bay Colony asserts that plaintiff was discharged because he was not qualified for the position at the conclusion of his FMLA leave. Specifically, Quitto could no longer "perform the essential functions of his position." (Doc. #45, p. 18.)  Bay Colony contends that this is a legitimate, nondiscriminatory basis for terminating Quitto.  Defendant argues that Quitto never provided any documentation showing that he was qualified for the position absent "any" restrictions. (Doc. #45, p. 18.)  The Court finds that this constitutes a legitimate nondiscriminatory basis, thereby shifting the burden back to plaintiff to show that this reason is a pretext for unlawful discrimination.

Plaintiff now bears the burden of offering enough probative evidence so that a reasonable jury might conclude that the defendant's reason for terminating the employee was a pretext for discrimination.  See Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d at 658; Reeves v. Sanderson Plumbing Prods., 533 U.S. at 143; Pennington v. City of Huntsville, 261 F.3d at 1266.  In the summary judgment context, a court must conduct this inquiry by determining whether a jury "could reasonably infer discrimination if the facts presented (by the plaintiff) remained unrebutted."  Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996).  The court "must avoid weighing conflicting evidence or making credibility determinations.  Rather, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).

After reviewing the entire record, the Court finds that plaintiff has made this requisite showing, and the evidence presented regarding whether Quitto was qualified for the position creates a jury issue.[6]  Therefore, the Court finds that summary

---

[6] Hairston v. Gainesville Sun Publ'g. Co., 9 F.3d 913, 920-21 (11th Cir. 1993)(finding that when determining whether plaintiff satisfied his/her burden under the pretext portion of the analysis, the Court may consider evidence already introduced to establish the *prima facie* case).

judgment is not appropriate as to Counts VI and VII relating to disability discrimination.

### (3)  Age Discrimination Claims under the ADEA and the FCRA

Plaintiff also claims that defendant discriminated against him based on his age, in violation of the ADEA.  To establish a claim under the ADEA in a case where the employee was terminated, a plaintiff must demonstrate: (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) he was replaced with a person outside the protected group, and (4) was qualified for the job.  See Jameson v. The Arrow Co., 75 F.3d 1528, 1531(11th Cir. 1996).  Defendant concedes that plaintiff meets prongs one and two.  (Doc. #45, p. 11.)  Furthermore, the Court finds that there is no dispute as to prong three since Quitto was replaced by thirty-seven year old Sergey Kashkin. (Doc. #56, p. 19.)  As to prong four, as discussed earlier the Court finds that for purposes of this motion, Quitto was qualified for the position.

Having established a prima facie case of age discrimination, the burden now shifts to defendant to proffer a nondiscriminatory reason for the decision.  Defendant once again asserts that Quitto was terminated because he was no longer qualified for the

position.   As stated earlier, the Court finds that this is a legitimate nondiscriminatory reason.   Plaintiff asserts that this basis is pretext for discrimination.   As the Court indicated in its analysis of plaintiff's claims for disability discrimination, Plaintiff has met his burden and has created a question of fact that cannot be resolved on summary judgment.   Therefore, summary judgment is denied as to Counts VIII and IX.

**IV.**

Quitto also brings two counts under the FMLA.   The Family and Medical Leave Act of 1993 provides eligible employees, among other rights, with up to twelve weeks of unpaid leave if a serious medical condition makes the employee unable to perform the functions of his or her position as an employee.   29 U.S.C. § 2612(a)(1)(D).   The FMLA creates two types of claims: (1) an interference claim, in which an employee asserts that his or her employer denied or otherwise interfered with substantive rights under the FMLA; and (2) a retaliation claim, in which an employee asserts that the employer discriminated against him because he engaged in activity protected by the FMLA.   29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c); Wascura v. City of South Miami, 257 F.3d 1238, 1247 (11th Cir. 2001); Strickland v. Water Works and Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001). Plaintiff asserts both claims.

**(1)   Interference with FMLA Rights:**

To survive summary judgment on an interference claim under the FMLA, plaintiff must raise a material issue of fact regarding three elements: (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse employment decision.  Wascura, 257 F.3d at 1248; Parris v. Miami Herald Pub. Co, 216 F.3d 1298, 1301 (11th Cir. 2000).  Plaintiff must show that he was entitled to a right which was denied, and need not allege or show that his employer intended to deny the right.  Strickland, 239 F.3d at 1208.

The question in this case is whether plaintiff was entitled to maintain his job at the conclusion of his FMLA leave.  29 C.F.R. § 825.214 guides this discussion, as it provides in relevant part that:

> (a) On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced. . .
>
> (b) If the employee is unable to perform an essential function of the position because of a physical . . . condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA. However, the employer's obligations may be governed by the Americans with Disabilities Act (ADA).

Thus, in order for Quitto to prevail on this count he need only show that at the conclusion of his FMLA leave that he was

able to perform the essential functions of his position. As discussed earlier, a reasonable jury could find that Quitto could perform the essential functions of his position, and hence entitled to return to his position. Therefore summary judgment is denied as to Count I.

**(2)  FMLA Retaliation**

In order to survive summary judgment on a FMLA retaliation claim, plaintiff must raise a material issue of fact regarding three elements: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006)(internal citations omitted); Cash v. Smith, 231 F.3d 1301, 1307 (11th Cir. 2000). An employee must show that the employer's action was motivated by an impermissible retaliatory or discriminatory animus. Strickland, 239 F.3d at 1207. In the absence of direct evidence of the employer's intent, the Court applies the burden-shifting McDonnell Douglas framework. Smith v. BellSouth Telecomm., Inc., 273 F.3d 1303, 1314 (11th Cir. 2002); Strickland, 239 F.3d at 1207; Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798 (11th Cir. 2000).

Plaintiff engaged in protected activity by requesting and taking leave under the FMLA. Plaintiff also clearly suffered an

adverse employment decision by being terminated.  As for the causal connection, the Eleventh Circuit has ruled that:

> We construe the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the ... [adverse] action are not completely unrelated.  A plaintiff satisfies this element if he provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse ... action.  A close temporal proximity between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case.

Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004)(internal citations and quotations omitted).  The Court finds that plaintiff has established a causal connection between his FMLA leave and his termination, as he was terminated immediately at the conclusion of his leave.

Having established a prima facie case of retaliation under the FMLA, the Court now applies the burden shifting analysis of McDonnell Douglas.  Under that analysis, as stated earlier, Quitto has put forth enough evidence to create a factual dispute as to whether the nondiscriminatory reason for his termination was pretextual.  Therefore, summary judgment is denied as to Count II.

**V.**

Bay Colony also filed a Motion to Strike Certain Portions of Plaintiff's Response to Defendant's Motion for Summary Judgment and Plaintiff's Declaration in Support.  (Doc. #58.)   In the motion, defendant asks this Court to strike the following: (a) portions of plaintiff's response in Doc. #56 dealing with failure to accommodate under the ADA and the FCRA; (b) portions of plaintiff's response dealing with the "regarded as" have a disability; and (c) portions of Quitto's affidavit that are inconsistent with his deposition testimony.

As an initial matter, plaintiff asserts that certain portions of defendant's motion constitute an unauthorized reply to Doc. #56, and therefore requests the Court to strike those portions. (Doc. #59, p. 2.)  The Court agrees.  Pursuant to M.D. Fla. L.R. 3.01(c), a party shall "[not] file any reply or further memorandum directed to the motion or response allowed in (a) and (b) unless the Court grants leave."  Defendant  did not seek leave to file such a reply.   Therefore, to the extent that portions of defendant's motion constitute a reply to Quitto's response to the Motion for Summary Judgment, those portions are hereby stricken.

Defendant argues that Quitto's response to the Motion for Summary Judgment interjects two new claims that were not included

in the Complaint.   Specifically, Bay Colony asserts that the response created two new causes of action for failure to accommodate and a "regarded as" claim.   (Doc. #58, p. 3.) Defendant argues that insertion of these two claims at this stage of the proceedings violate the notice pleading requirements of Fed. R. Civ. P. 8.

The Court disagrees.   First, as to the "regarded as" claim, the Complaint is sufficiently pled.   The Complaint states that "Plaintiff suffered from a disability.   Defendant was aware of Plaintiff's disability."   (Doc. #2, ¶¶ 79, 80.)   As discussed earlier, the statutory definition of "disability" includes the principal of "regarded as."   Therefore, the Court finds that this does not constitute a new or additional claim.   Second, as to "reasonable accommodation" the Court addressed this issue above in Section III(B)(2)(b).   The statutory definition of discrimination includes the failure to provide a reasonable accommodation.   See 42 U.S.C. § 12112(b)(5)(A).

Defendant's motion also asks this Court to strike the portions of plaintiff's affidavit that are inconsistent with his deposition.   (Doc. #58, p. 1.)   Defendant argues that the declaration is self-serving and constitutes a "sham".   (Id. at p. 9.)   Plaintiff responds by asserting that the affidavit does not conflict with his deposition testimony.   (Doc. #59, p. 5.)   The

Court did not rely on the affidavit on ruling on defendant's Motion for Summary Judgment and therefore defendant's Motion to Strike Portions of Plaintiff's Affidavit is denied as moot.

**VI.**

Also before the Court is defendant's Motion to Strike Deposition Transcripts in Support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. (Doc. # 69.)   In the motion, defendant argues that all transcripts filed by plaintiff on May 15, 2007 should be stricken for being untimely.   (Doc. #69, p. 2.)   In support of their position, defendant cites Corwin v. Walt Disney Co., 475 F.3d 1239, 1252 (11th Cir. 2007) for the proposition that "it is not an abuse of discretion to exclude supplemental affidavits and reports that were untimely filed."   Id.

The Court finds that defendant has failed to show good cause as to why the depositions should be stricken.   In Corwin, the filings at issue were affidavits and reports which by their nature do not provide the opposing party an opportunity to question their content and may constitute unfair surprise.   In the present case, defense counsel was present for all the depositions and was given the opportunity to cross examine each witness.   Furthermore, defendant does not assert that the depositions were taken in an untimely fashion, defense counsel

only questions the timeliness of their filing with the Court. Even if they were untimely filed, the Court shall exercise its discretion and deny the motion.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   Defendant's Motion for Summary Judgment (Doc. #45) is **GRANTED** as to Counts III, IV, and V, and is otherwise **DENIED**.

2.   Defendant's Motion to Strike Portions of Plaintiff's Declaration (Doc. #58) is **DENIED** as moot.

3.   Plaintiff's Motion to Strike Portions of Defendant's Motion to Strike Deposition Transcripts, contained in plaintiff's Response to Defendant's Motion to Strike (Doc. # 59) is **GRANTED** to the extent that it constitutes an unauthorized reply.

4.   Defendant's Motion to Strike Deposition Transcripts in Support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. # 69) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   5th   day of July, 2007.

JOHN E. STEELE
United States District Judge